Max E. Wind v. Commissioner
Wind v. Commissioner
Docket No. 2344.
United States Tax Court
1944 Tax Ct. Memo LEXIS 285; 3 T.C.M. (CCH) 376; T.C.M. (RIA) 44125; April 18, 1944
*285 Claude L. Allen, Esq., 209 Washington St., Boston, Mass., for the petitioner. James T. Haslam, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined a deficiency in income tax for the calendar year 1940 in the amount of $12,818.09. The sole issue is whether the amount of $22,636.96 received by petitioner from the Wind Innersole & Counter Company, Inc. (in the language of the notice of deficiency) "as alleged reimbursement for travel and entertainment expenses is taxable income * * *." Findings of Fact Petitioner is president and principal stockholder of Wind Innersole & Counter Co., Inc. of Campello (Brockton), Mass. The business was established by him many years ago with a capital of only a few hundred dollars. It has grown quite rapidly and during the taxable year its gross sales were in excess of a million dollars. The company, as the name indicates, was engaged in selling innersoles and counters to shoe manufacturing companies. It had approximately 250 customers, several being in the Brockton area but others being in the West and Middle West, especially in Michigan, Wisconsin, Chicago, St. Louis, Tennessee and *286 Ohio. The company employed some salesmen; but petitioner endeavored to keep in close touch with all of its customers. To that end he travelled quite extensively. He also kept in close touch with those in Brockton, Massachusetts. During the taxable year petitioner received a salary of $55,000 from the company. This amount was paid to him in substantially equal weekly payments. In addition, the company paid to or for petitioner the aggregate amount of $22,636.96. While traveling for the company, including frequent trips to Boston and New York, it was petitioner's custom to stop at the most expensive hotels, renting a suite of rooms in which he entertained buyers and other representatives of the shoe companies and their wives quite lavishly. This was also done at various conventions of shoe dealers. During the month of February 1940 petitioner and his wife took a combination business trip and annual vacation to Miami, Florida. They stopped at a hotel where the cost of rooms and meals was $50 per day. They entertained quite lavishly and charged upon their account at the hotel several hundred dollars in connection with extra meals, room service, beverages, solarium, etc. While in *287 Florida, petitioner made a trip to Havana, Cuba, for the purpose of interviewing some of his sales agents in that country. No effort was made to keep his personal and business expenses separate; but the company paid to or for him, for expenses for the two months, the aggregate amount of $6,045.82. Petitioner did not include the $22,636.96 or any part thereof in his gross income. $12,000 of said amount was actually expended by petitioner for traveling and entertainment expense in behalf of Wind Innersole & Counter Co. and the remainder, or $10,636.96 constituted income to him. Opinion The finding which has been made and which was announced at the conclusion of the evidence, following argument, is determinative of the sole issue. In making it we have followed the admonition of the Circuit Court of Appeals for the Second Circuit in , making as close an approximation of the amount expended for traveling and entertainment expense as we can and bearing somewhat heavily against the taxpayer because of his inexactitude in keeping proper accounts. We are satisfied that he expended substantial sums for hotels, entertainment, *288 railway and travel on behalf of his company. The checks introduced in evidence, buttressed by his testimony, impel such conclusion. We are of the opinion, however, that he received from his company a substantial amount in excess of the amount so expended by him. There are many circumstances so indicating, a few of which will be mentioned. The trip to Florida is an outstanding example. It was very largely a midwinter vacation for him and his wife. The hotel bill shows not only that the suite was occupied by both of them but that the wife purchased gowns and other items of wearing apparel which were charged to the account. Also that items of cash had been turned over by the hotel to one or both of them. It also contained various entries for the beauty shop, golf course, long distance calls, solarium and similar items, indicating that they were purely personal expenditures. The same thing is true in connection with some of the other hotel bills introduced in evidence. Some are in the name of Gertrude Wind and others indicate, as petitioner admitted, that some of the expenditures had been made for and on behalf of his son. There are other circumstances militating forcefully against *289 petitioner's contention that all of the amounts turned over to him by his company were expended as contemplated by the statute. Thus, the monthly vouchers purporting to list the amounts turned over to petitioner almost invariably included one item of $365.25. Petitioner and the treasurer of the company were both rather vague in explaining why this particular amount appeared upon each voucher. The substance of their testimony was that it was always estimated this would be about the amount which petitioner would expend while away from Brockton on each of his several trips. The evidence is not convincing. It is impossible to rationalize completely the conclusion which has been reached. We are satisfied from the evidence that petitioner received from his company a sum substantially in excess of the amount actually expended by him in traveling for it and in entertaining its customers. Our conclusion is that $10,636.96 is in this category. Whether the entire $22,636.96 is to be included in his gross income, as contemplated by section 19.23 (a) - 2 (b) of Regulations 103 and the $12,000 which we have found was expended in behalf of the company is deducted, or whether only $10,636.96 is included *290 in gross income is unimportant. In either event we approve the portion of the deficiency attributable to the inclusion in gross income of $10,636.96. Cf. . Decision will be entered under Rule 50.